UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEWELRY DEPOT, INC. and : 
SEAN S. BACH, :
                                                  :

               Plaintiffs, : No. _____

                                                 :

   *- against -* : COMPLAINT
                                                   :

U.S. SMALL BUSINESS ADMINISTRATION and : 
KELLY LOEFFLER, in her official capacity as : 
Administrator of the U.S. Small Business :
Administration, :
                                                   :

              Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NATURE OF THE ACTION**

1.      For twenty years and until very recently, Jewelry Depot, Inc. thrived as a small, family-owned fine-jewelry business in South Florida.  However, the COVID-19 pandemic and two natural disasters in rapid succession—Hurricane Ian in 2022 and South Florida's 2024 flooding disaster—threw the business into severe distress.  The COVID–Hurricane Ian–Flood triple punch brought Jewelry Depot to its knees.  After COVID reduced Jewelry Depot's customer base, the hurricane reduced it further, and floods severely damaged the Company's retail store, forcing it to temporarily shut down while the business relocated.  Suffering a sharp drop in revenue, the Company is struggling to recover.

2.      To aid its recovery, Jewelry Depot sought loan servicing relief on its Small Business Administration ("SBA") loans and an increase of its SBA Economic Injury Disaster Loan ("EIDL") specific to the flooding disaster.  The Company needs this relief to restore its business to profitability and repay its loans.  The SBA, however, has unlawfully withheld the requested

1

relief based on its misreadings of federal law and failures to meaningfully consider Jewelry Depot's well-supported requests.

3.     Because of the SBA's baseless refusals of relief, Jewelry Depot's loans are no longer in good standing, and the agency has branded Jewelry Depot as having an "unsatisfactory payment history."  Based on that branding, the SBA refused to increase its Flood EIDL to cover additional economic injury flowing directly from the flooding disaster.

4.     The refused loan relief that led to Jewelry Depot's "unsatisfactory payment history" designation involves three loans: a COVID EIDL, the Hurricane Ian EIDL, and an SBA 7(a) loan.

5.     Regarding the COVID EIDL, the SBA's erroneous interpretation of SBA regulations led the agency to deny Jewelry Depot's request for relief.  The SBA read the regulations on loan relief to apply only to natural disaster loans and not to COVID EIDL loans. But in fact, COVID EIDLs are governed by the same regulations as natural disaster loans, because Congress specifically deemed COVID to be a disaster for purposes of the statute authorizing the SBA to make disaster loans.  Accordingly, the SBA erred in denying Jewelry Depot's requested relief regarding the COVID EIDL.

6.     As for the Hurricane Ian EIDL and SBA 7(a) loan, the SBA denied Jewelry Depot's requests for relief on both without any meaningful consideration.  The agency denied each request within minutes of receiving it and thus without engaging in the reasoned decisionmaking required by the Administrative Procedure Act ("APA").

7.     Congress created the SBA "to aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise" and granted the SBA powerful tools with which to do so.  15 U.S.C. § 631(a).  Among those tools are disaster loans to aid businesses suffering economic injury from declared disasters, the authority to

2

defer payments and extend maturities when a borrower's inability to pay its SBA loan is beyond its control, and the broad authority to service and restructure 7(a) loans in the face of a borrower's financial difficulty.  This case challenges the SBA's unlawful refusal to utilize those tools to aid a small business, in spite of its Congressional mandate, based on its misreadings of law and inappropriate summary denials of relief.

8.      Jewelry Depot and its majority shareholder Sean S. Bach urgently need relief from the SBA's actions that are arbitrary and capricious and contrary to law.  The SBA has accelerated the Flood and Hurricane Ian loans.  Without a preliminary stay from this Court to preserve the status quo, the SBA's collection machinery will consummate the challenged actions—through liquidation, acceleration, Treasury referral, and related enforcement steps.  If that happens, judicial review will be meaningless: Jewelry Depot will fail, Mr. Bach will be forced into bankruptcy, and there will be nothing left for the Court to review.

**PARTIES**

9.      Plaintiff Jewelry Depot, Inc. ("Jewelry Depot") is a Florida corporation incorporated on February 9, 2001, with its principal place of business at 3333 North Federal Highway, Suite 1028, Fort Lauderdale, Florida 33306.  It is a family-owned fine jewelry business in South Florida with roots in the jewelry trade dating back to 1980.  The Company has been struck by three federally declared disasters—the COVID-19 pandemic in 2020, Hurricane Ian in 2022, and severe flooding in June 2024.  The June 2024 flood forced a seven-month operational shutdown and caused flood-related economic injury exceeding $1.2 million.  That injury continues to grow because the SBA has refused to provide the necessary relief that would allow the business to recover.

10.     Plaintiff Sean S. Bach ("Mr. Bach," and together with Jewelry Depot, "Plaintiffs") is a resident of New York, New York.  He is Jewelry Depot's majority shareholder, Vice President,

Director, and Secretary.  He personally guaranteed the COVID EIDL, the Hurricane Ian EIDL, and the Flood EIDL.  Both Mr. Bach and Jewelry Depot receive SBA correspondence and collection notices at Mr. Bach's New York address.

11.    Defendant U.S. Small Business Administration is an agency of the United States within the meaning of 5 U.S.C. § 701(b)(1).

12.    Defendant Kelly Loeffler is the Administrator of SBA and is sued solely in her official capacity.

## JURISDICTION AND VENUE

13.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it presents federal questions under the APA.

14.    Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(C) because Mr. Bach resides in this District.  In addition, the SBA directed correspondence regarding the loans at issue to Mr. Bach and Jewelry Depot at Mr. Bach's New York residence.

## STATUTORY AND REGULATORY BACKGROUND

15.    Congress authorized the SBA to make disaster loans, including EIDLs, to small businesses that suffer substantial economic injury as a result of a declared disaster.  15 U.S.C. § 636(b)(2).

16.    The SBA's disaster-loan servicing regulations authorize a borrower to request suspension of payments, extension of maturity, or both, when the borrower's inability to pay is "for reasons substantially beyond [the borrower's] control."  13 C.F.R. § 123.16(b).

17.    The SBA's regulations provide that the SBA "will consider" an increase to an EIDL when the increase is "essential for [the] business to continue and is based on events occurring after SBA approved [the] original loan which were beyond [the borrower's] control."  13 C.F.R. § 123.19.

4

18.    Congress authorized COVID-19 EIDLs to be made pursuant to the same statutory provision as all disaster loans, 15 U.S.C. § 636(b)(2)(D).  Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Title II, Pub. L. No. 116-123, 134 Stat. 146, 147 (Mar. 6, 2020) ("That for purposes of section 7(b)(2)(D) of the Small Business Act [15 U.S.C. § 636(b)(2)(D)], coronavirus shall be deemed to be a disaster and amounts available under 'Disaster Loans Program Account' for the cost of direct loans in any fiscal year may be used to make economic injury disaster loans under such section in response to the coronavirus[.]").  The SBA's regulations in 13 C.F.R. part 123 "cover[] the disaster loan programs authorized under the Small Business Act, 15 U.S.C. 636(b), (d), and (f); and 15 U.S.C. 657n." 13 C.F.R. § 123.1.

19.    SBA 7(a) loans are serviced by private lenders and guaranteed by the SBA.  The SBA also has broad authority to service them.  The SBA can defer payment on a 7(a) loan and "use such other methods to help in the successful operation of the Borrower," extend the maturity of a 7(a) loan for up to ten years "if the extension will aid in the orderly repayment of the loan," and take over servicing of a 7(a) loan.  13 C.F.R. §§ 120.530, 120.531, 120.535(d).

## FACTS

### A.  The 2024 Flood and Its Consequences

20.    Until the summer of 2024, Jewelry Depot operated successfully from a 9,000-square-foot retail store in Hallandale Beach, Florida.  It now operates from a much smaller 2,264-square foot commercial showroom space in Fort Lauderdale, Florida.

21.    On July 8, 2024, following severe storms and flooding in South Florida, the SBA designated Broward and Miami-Dade Counties as primary disaster areas for the June 11-14, 2024 incident period.  SBA, Administrative Declaration of a Disaster for the State of Florida, 89 Fed. Reg. 55,994 (July 8, 2024).  Jewelry Depot's former Hallandale Beach location and its current Fort Lauderdale location are both in Broward County.

5

22.    The June 2024 flooding caused extensive damage to Jewelry Depot's Hallandale Beach store, including destruction of internal walls throughout the premises.  For the next five months following the flooding, Jewelry Depot's Hallandale landlord failed to repair the damage.  The store was left in visible disrepair, and customers regularly asked whether the Company was "going out of business."  For a fine jewelry retailer that depends upon high customer trust to make each and every sale, the damage to consumer confidence had severe and lasting repercussions to Jewelry Depot's business.

23.    The extensive damage forced Jewelry Depot to terminate its lease early and vacate its Hallandale Beach location while it searched for a replacement location.  The Company held a store closing sale during the industry's peak selling season that year (November 2024 through February 2025).  Projected revenues under normal conditions exceeded $1,500,000.  But due to the flood damage, months of disrepair, and local reputational loss, actual sales were $203,406—less than 14% of projections.

24.    Jewelry Depot left its Hallandale Beach location on March 14, 2025, and was unable to reopen at a new site until October 15, 2025—a seven-month involuntary shutdown.  During this period, Jewelry Depot continued to incur operating costs, including payroll and insurance, as well as costs to securely store its jewelry inventory—all while generating no revenue due to conditions outside of the Company's control.

25.    Following this unforeseen temporary shutdown, Jewelry Depot significantly reduced its costs.  It moved from a 9,000-square-foot retail space with annual occupancy costs exceeding $380,000 to a 2,264-square-foot commercial showroom with annual rent under $63,000.  It reduced headcount to align with the new space, saving approximately $45,000 per year.  And it reduced insurance costs by approximately $17,000 per year.  In total, Jewelry Depot cut its fixed

operating expenses by more than $380,000 annually, dramatically lowering the revenue required to break even and return to profitability.  Jewelry Depot presented these facts to the SBA in its application to increase its Flood EIDL.  But the SBA failed to consider them.

### B.  Jewelry Depot's SBA Loan Portfolio

26.    Jewelry Depot has four SBA loans: (i) a 7(a) Loan obtained in 2018 (the "7(a) Loan"); (ii) a COVID EIDL obtained in 2020 (the "COVID EIDL"); (iii) a Hurricane Ian EIDL obtained in 2023 (the "Hurricane Ian EIDL"); and (iv) a Severe Flooding Disaster EIDL, obtained in 2024 (the "Flood EIDL," and collectively, the "SBA Loans").

27.    Mr. Bach personally guaranteed the three EIDLs.

28.    Until Jewelry Depot's unplanned temporary shutdown in March 2025, all four SBA Loans were in good standing.

29.    The Company's inability to generate revenue during the shutdown made payments under the SBA Loans impossible.

### C.  Denial of Increase to Flood EIDL

30.    On December 23, 2024, Jewelry Depot obtained a Severe Flooding EIDL of $298,100 with a 30-year term (No. 6739579108).

31.    As of September 30, 2025, Jewelry Depot had sustained flood-related losses of approximately $773,000 with additional projected losses through September 30, 2026 of approximately $438,000.  Thus, because of the temporary shutdown stemming directly from the flooding disaster, Jewelry Depot's sustained economic injury and projected losses from June 2024 through September 2026 resulting from the disaster totaled over $1,200,000.  Jewelry Depot's total disaster-related losses thus exceeded its initial estimate and the amount of its Flood EIDL by more than $900,000.

32. On October 2, 2025, Jewelry Depot applied through the MySBA Loan Portal for an increase to its Flood EIDL. The Company planned to use those funds to recover and return to the profitability it enjoyed before disaster struck thrice over. Jewelry Depot supported its application with detailed documentation of its $1.2 million economic injury and the cost-cutting measures it had undertaken in attempting to recover.

33. Just five days later, on October 7, 2025, the SBA informed Mr. Bach by telephone that the requested increase would be denied because of unsatisfactory payment history on the Company's other SBA Loans.

34. That same day, Mr. Bach submitted written requests for servicing relief on the three other loans, as described below.

35. All four SBA Loans had been current before the flood-induced temporary shutdown began in March 2025. That is, the SBA cited payment delinquencies *caused by* the same disaster that gave rise to the Flood EIDL increase request in its explanation of the October 7th denial. Those payment delinquencies occurred precisely because the same flood that gave rise to the initial Flood EIDL destroyed Jewelry Depot's revenue base and led to an unforeseen seven-month shutdown.

36. On November 4, 2025, Jewelry Depot appealed the denial of the requested increase. On January 5, 2026, the SBA informed Mr. Bach by telephone that the appeal would be summarily denied on the same payment-history grounds, with no further appeal available. Based on that representation, Mr. Bach withdrew the appeal.

### D. Denial of Relief on COVID-19 EIDL

37. On June 9, 2020, Jewelry Depot obtained a COVID EIDL of $150,000 with a 30-year term (No. 7872727803). After initially rejecting the Company's request for an increase based on legal and factual errors, the SBA increased the loan to $500,000.

8

38.     On October 7, 2025, Jewelry Depot submitted a written request for COVID EIDL servicing relief, specifically the suspension of payments and extension of maturity, invoking 13 C.F.R. § 123.16(b).  Mr. Bach supported the request with a detailed explanation of the Company's need for the relief following the economic injury from the flooding disaster on top of the injuries from Hurricane Ian and COVID-19.

39.     On October 16, 2025, the SBA responded: "13 CFR § 123.16(b) refers to natural Disaster loans; Not COVID EIDL loans."  The SBA did not evaluate the request on its merits.

40.     After alerting the SBA that its regulatory interpretation was erroneous multiple times and seeking correction without success, Jewelry Depot contacted the SBA Ombudsman's office.

41.     On January 12, 2026, the SBA's Acting Director of the Disaster Lending Operations Division wrote to the Ombudsman but did not address the erroneous regulatory interpretation.  The Ombudsman instead stated that the SBA was offering short-term payment assistance only to borrowers that met certain criteria including that the subject loan was 90 days or less past due.  Jewelry Depot's loan was more than 90 days past due.

42.     Because the COVID EIDL remains delinquent, it continues to feed the "unsatisfactory payment history" that the SBA used to deny the Flood EIDL increase.

### E.  Denial of Relief on Hurricane Ian EIDL

43.     On May 4, 2023, Jewelry Depot obtained a Hurricane Ian EIDL of $434,300 with a 30-year term (No. 5019409100).  The SBA subsequently increased the amount to $815,200.

44.     On October 7, 2025, Mr. Bach submitted a written request for servicing relief on the Hurricane Ian EIDL, specifically suspension of payments and extension of maturity.  Mr. Bach supported the request with a detailed description of the Company's need for relief following the flooding disaster.  The SBA initially denied the request on the grounds that the loan was 133 days

delinquent and therefore, according to the SBA representative, did not qualify for the Hardship Accommodation Plan.  However, on October 23, 2025, an SBA loan specialist granted a six-month deferment, retroactive to June 5, 2025 (and ending November 5, 2025), confirmed that Jewelry Depot's account was "now in good standing," and promised to "reevaluate" in December 2025.

45.    On December 8, 2025, Mr. Bach returned to the SBA as directed and emailed the SBA loan specialist requesting the promised reevaluation.  The loan specialist read the email at 2:24 PM EST and replied six minutes later, at 2:30 PM EST, as shown by the read receipt, denying further relief and stating that the only remaining option was the Hardship Accommodation Plan.

46.    Mr. Bach immediately challenged the cursory denial in writing, pointing out that it would have been impossible for the SBA to have conducted a meaningful review within that short, 6-minute window.  A supervisory loan specialist responded and indicated that the request seemed "more like a long-term request than a temporary request" because of the two prior deferrals.  The supervisory loan specialist committed to reviewing the matter with his director the following day, December 9, 2025.

47.    On December 30, 2025, the supervisory loan specialist reported that the director would not approve the relief requested by Jewelry Depot and that only the Hardship Accommodation Plan was available.  The Hardship Accommodation Plan would not help the Company because, following the involuntary flood-related shutdown, it could not make the payments that would be required.

48.    Mr. Bach responded the same day, explaining that "temporary" in the context of a 30-year loan could be a period of a year or two.  The SBA did not respond.

49.    Subsequently, in response to an inquiry from Mr. Bach's congressional representative, the SBA wrote that, contrary to what it had told Mr. Bach, additional deferments

10

beyond the two granted were possible but require unspecified documentation that "has not been provided." The SBA never notified Mr. Bach that documentation beyond what he had provided was required.

50. On March 7, 2026, the SBA issued a liquidation notice on the Hurricane Ian EIDL, a loan the SBA had restored to good standing less than five months earlier. Because Mr. Bach personally guaranteed this loan, the liquidation notice harms him directly.

51. Because the Hurricane Ian EIDL is now in liquidation, it further feeds the "unsatisfactory payment history" that blocks relief on the Flood EIDL.

### F. Denial of Relief on 7(a) Loan

52. In May 2018, Jewelry Depot obtained a 7(a) loan of $283,000 with a 10-year term (No. 2575597007). Midwest Regional Bank approved and serviced the loan.

53. In May 2025, after Jewelry Depot's unplanned temporary shutdown that prevented it from making loan payments, Midwest Regional Bank transferred the 7(a) Loan to liquidation status.

54. On October 7, 2025, Jewelry Depot submitted a request for 7(a) loan servicing relief to FSC.servicing@sba.gov, the email address the SBA had provided by telephone that same day. Mr. Bach requested that the SBA direct a deferment of the loan payments, extend the maturity, and/or assume servicing from the lender pursuant to its authority under 13 C.F.R. §§ 120.530–120.535. Jewelry Depot supported the request with a detailed explanation of its economic injury stemming from the flooding disaster and need for relief from the 7(a) Loan.

55. After receiving no response, Mr. Bach called the SBA on October 14, 2025, and the SBA directed him to a different email address, loanresolution@sba.gov. Mr. Bach emailed the Loan Resolution Center that same day and received an automated reply advising that all agency

11

employees were on furlough due to a lapse in appropriations during the federal government shutdown in the fall of 2025.

56. On November 13, 2025—the same day the federal government shutdown ended and SBA operations resumed—Mr. Bach immediately followed up with the SBA's Loan Resolution Center, submitting a detailed written request reiterating Jewelry Depot's request that the SBA direct a deferment of the loan payments, extend the maturity, and assume servicing.

57. On November 14, 2025, Mr. Bach called Midwest Regional Bank. After Mr. Bach briefed the Midwest Regional representative on Jewelry Depot's situation, the representative informed Mr. Bach that the SBA had purchased 75% of the 7(a) Loan. Later that day, Mr. Bach submitted a parallel written request for relief to Midwest Regional Bank. On November 19, 2025, Midwest's Special Assets officer declined the request, stating that the loan was "in liquidation status with SBA."

58. On November 21, 2025, Mr. Bach submitted a comprehensive 3,260-word follow-up to the Loan Resolution Center with four attachments (his October 2025 emails to the SBA; his October 7, 2025 request for immediate assistance; his November 14, 2025 request to Midwest Regional Bank; and Midwest Regional Bank's November 19, 2025 denial correspondence).

59. On November 25, 2025, a SBA Loan Resolution Center representative read Mr. Bach's submission at 10:27 AM and responded eleven minutes later at 10:38 AM, as shown on the read receipt, referring him back to Midwest Regional Bank.

60. Mr. Bach submitted a detailed escalation email to the SBA that same day, challenging the cursory review and reiterating the request for relief with supporting detail. The SBA did not respond.

12

61.    Like the other three loans, the 7(a) Loan's unresolved status feeds back into the "unsatisfactory payment history" that blocks a Flood EIDL increase.

### G. The Collection Emergency and Irreparable Harm

62.    Between February 19 and April 28, 2026, the SBA sent Plaintiffs nine delinquency, liquidation, and acceleration notices relating to the Flood EIDL and Hurricane Ian EIDL.  On March 28, 2026, the SBA formally accelerated the Hurricane Ian EIDL, demanding payment of $837,264.44 within ten business days.

63.    On April 17, 2026, the SBA issued a second Notice of Default and Acceleration Demand, this time on the Flood EIDL itself, accelerating the entire balance and demanding $301,726.20 within ten days, with daily interest of $32.67 accruing thereafter.  The acceleration is the direct consequence of the SBA's denial of the October 2025 increase request based on the "unsatisfactory payment history" of the other loans, a payment history that stemmed directly from the flooding disaster that gave rise to the Flood EIDL and for which the SBA arbitrarily and capriciously denied relief, contrary to law, as described above.

64.    On April 28, 2026, the SBA notified Mr. Bach that the Flood EIDL is "in the treasury offset system" and explained that, consequently, the SBA can withhold income from the federal government, including tax refunds.  The notice continued that unless Mr. Bach makes at least three payments, the SBA will transfer the loan to the Department of Treasury "where they will take a more aggressive approach in recovering the remaining balance of your loan."

65.    On April 28, 2026, the SBA sent Mr. Bach a Final Notice Before Referral for Liquidation for the Hurricane Ian EIDL.  The notice states that the loan will be referred to liquidation unless Jewelry Depot immediately remits funds.

66.    As of April 28, 2026, the SBA's MySBA Loan Portal confirmed that the COVID EIDL stands in "SBA Uncollectible" status with a payoff balance of $545,154.07 and daily interest

accruing at $51.22, and that the "SBA is preparing to refer [the] debt to Treasury Cross-Servicing for further collection."

67.     To meet basic expenses, Jewelry Depot has been forced to break precious stones from their settings and send gold to be refined—literally destroying inventory to survive. This inventory consists of closeout merchandise sourced at below-market prices, goods that cannot be repurchased at comparable cost and that could otherwise be sold at a notable profit. Once destroyed, the inventory is permanently and irreversibly lost. Jewelry Depot has been unable to repair equipment essential to its gold-buying operations due to the financial distress compounded by the SBA's wrongful denials of relief on the SBA Loans. Further, and as a result of those denials, the business lacks sufficient resources to actively market its reopening, and revenue continues at severely reduced levels.

68.     Mr. Bach's personal-guarantee exposure on the three guaranteed loans totals approximately $1.68 million. Additionally, he has personally lent Jewelry Depot over $280,000 to sustain the business in the absence of the working capital that the Flood EIDL increase would have provided. He has drained his finances and is the subject of a pending eviction proceeding concerning his New York residence (Case No. LT-321339-25/NY, next court date May 11, 2026).

69.     Treasury referral on any of the three personally guaranteed loans will add 28-30% in fees, will trigger cross-servicing consequences that are practically impossible to unwind, and accordingly will cause Jewelry Depot to fail.

## COUNT I
### Denial of Relief on COVID EIDL:
### Arbitrary and Capricious, Abuse of Discretion, Contrary to Law

70.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 69 above as though fully set forth herein.

14

71.     The SBA refused to consider COVID EIDL servicing relief under 13 C.F.R. § 123.16(b) based on an erroneous conclusion that the regulation does not apply to COVID EIDL loans.

72.     Contrary to the SBA's assertion, the loan relief available under 13 C.F.R. § 123.16(b) extends to COVID EIDL loans.

73.     Congress explicitly recognized COVID-19 as a disaster for which the SBA is authorized to make EIDL loans available under the same statutory provision as all other disaster loans (15 U.S.C. § 636(d)(2)(D)).  Pub. L. No. 116-123, 134 Stat. at 147.

74.     The SBA's regulations governing disaster loans and relief thereon apply to all disaster loans, including COVID EIDLs.  13 C.F.R. pt. 123.

75.     The SBA's categorical exclusion of COVID EIDLs from the protections available under 13 C.F.R. § 123.16(b) and its refusal to consider Jewelry Depot's request for relief on its COVID EIDL under that regulatory provision were arbitrary and capricious, an abuse of discretion, and contrary to law.

### COUNT II
### Denial of Relief on Hurricane Ian EIDL:
### Arbitrary and Capricious, Abuse of Discretion, Contrary to Law

76.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 75 as though fully set forth herein.

77.     The SBA denied Jewelry Depot's December 2025 request for deferment six minutes after opening the request.  The agency could not have given meaningful consideration to the request and supporting documentation in that short of a time period.

78.     After Jewelry Depot escalated its request, the agency gave conflicting explanations for the denial.  First, it told Mr. Bach that deferment was not possible because two deferments had already been granted.  Then, it told Mr. Bach's congressional representative that while additional

deferment was possible, Jewelry Depot had not provided the required documentation—documentation that the SBA never specified or notified Jewelry Depot was necessary.

79. The agency then issued a liquidation notice on a loan it had restored to good standing less than five months earlier.

80. No regulatory provision imposes a cap on the number of deferments, a cumulative duration limit, or a distinction between "temporary" and "long-term" hardship. Instead, the regulation authorizes relief when the borrower's inability to pay is "for reasons substantially beyond [the borrower's] control." 13 C.F.R. § 123.16(b).

81. Jewelry Depot's inability to pay installments on its Hurricane Ian EIDL was because of the flooding disaster's severe economic impact and entirely beyond the Company's control. Yet, the SBA failed to consider Jewelry Depot's request for relief as required by its regulations.

82. The SBA failed its obligation to examine the relevant data and articulate a satisfactory explanation for its action.

83. The SBA's denial of Jewelry Depot's request for relief on its Hurricane Ian EIDL was arbitrary, capricious, an abuse of discretion, and contrary to law.

**<u>COUNT III</u>**
**Denial of Relief for 7(a) Loan:**
**Arbitrary and Capricious, Abuse of Discretion, Contrary to Law**

84. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 83 above as though fully set forth herein.

85. The SBA has express statutory and regulatory authority to defer payment on a 7(a) loan, to use other methods "to help in the successful operation of the Borrower," to extend the maturity of a 7(a) loan for up to ten years "if the extension will aid in the orderly repayment of the loan," and to take over servicing of a 7(a) loan. 13 C.F.R. §§ 120.530, 120.531, 120.535(d).

16

86. When Jewelry Depot asked the SBA to exercise its authority to provide relief, the SBA denied the request just eleven minutes later. The agency could not have meaningfully considered the Company's request—supported by a 3,260-word explanation and four attachments—in that short of a time period.

87. The SBA's denial of Jewelry Depot's request for relief on its 7(a) Loan was arbitrary, capricious, an abuse of discretion, and contrary to law.

## COUNT IV
### Denial of Increase to Flood EIDL:
### Arbitrary and Capricious, Abuse of Discretion Contrary to Law

88. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 87 above as though fully set forth herein.

89. Under 13 C.F.R. § 123.19, the SBA was required to evaluate whether post-approval events beyond Jewelry Depot's control make an increase in the Flood EIDL essential for the business to continue. Jewelry Depot established exactly that, including by presenting a detailed explanation of the seven-month temporary shutdown and over $1.2 million in quantified economic disaster injuries, both flowing directly from the flooding disaster. Yet the SBA denied the increase for "unsatisfactory payment history" without addressing any of the criteria specified in section 123.19.

90. The SBA also failed to consider an important aspect of the problem: the payment delinquencies it relied upon in denying the increase request were all caused by *the same disaster* that gave rise to the increase request. All four SBA Loans had been current before the flooding disaster-induced shutdown. Jewelry Depot provided the SBA with extensive evidence of this causal connection, but the agency arbitrarily and capriciously disregarded it.

91. The SBA's denial of relief on the Flood EIDL increase request was arbitrary, capricious, an abuse of discretion, and contrary to law.

17

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

(a)    Preliminarily order Defendants to stay all collection steps on the Flood EIDL (No. 6739579108), the Hurricane Ian EIDL (No. 5019409100), the COVID EIDL (No. 7872727803), and the 7(a) Loan (No. 2575597007);

(b)    Declare unlawful and set aside the SBA's denial of Plaintiffs' request for relief on the COVID EIDL loan as arbitrary, capricious, an abuse of discretion, and contrary to law, and remand the matter to the SBA for consideration in accordance with its regulations and the requirements of reasoned decisionmaking;

(c)    Declare unlawful and set aside the SBA's denial of Plaintiffs' request for relief on the Hurricane Ian EIDL as arbitrary, capricious, an abuse of discretion, and contrary to law, and remand the matter to the SBA for consideration in accordance with its regulations and the requirements of reasoned decisionmaking;

(d)    Declare unlawful and set aside the SBA's denial of Plaintiffs' request for relief on the 7(a) Loan servicing as arbitrary, capricious, an abuse of discretion, and contrary to law, and remand the matter to the SBA for consideration in accordance with its regulations and the requirements of reasoned decisionmaking;

(e)    Declare unlawful and set aside the SBA's denial of Plaintiffs' request for an increase of its Flood EIDL as arbitrary, capricious, an abuse of discretion, and contrary to law, and remand the matter to the SBA for consideration in accordance with its regulations and the requirements of reasoned decisionmaking;

(f)    Award Plaintiffs their costs and reasonable attorneys' fees; and

(g)    Grant such other and further relief as this Court deems just and proper.

18

Dated:  April 29, 2026

      New York, New York

                         Respectfully submitted,

                          */s/  Anne M. Evans*
                         Anne M. Evans
                         (N.Y. Bar No. 5247838)
                         Dara R. Mouhot
                         (N.Y. Bar No. 5921119)
                         AKIN GUMP STRAUSS HAUER & FELD LLP
                         One Bryant Park
                         New York, NY 10036
                         Telephone: (212) 872-1000
                         Email: aevans@akingump.com

                         Caroline L. Wolverton
                         (motion for pro hac vice admission forthcoming)
                         AKIN GUMP STRAUSS HAUER & FELD LLP
                         2001 K Street, N.W.
                         Washington, D.C. 20006
                         Telephone: (202) 887-4107
                         Email: cwolverton@akingump.com

                         *Counsel for Plaintiffs Jewelry Depot, Inc.*
                         *and Sean S. Bach*